IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN PLEASANT,

    Plaintiff,

       v.

D&N ELECTRIC COMPANY,

    Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-2748-TWT

## ORDER

     This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  It is before the Court on the Defendant D&N Electric Company's Motion for Summary Judgment [Doc. 31].  For the reasons set forth below, the Defendant D&N Electric Company's Motion for Summary Judgment [Doc. 31] is GRANTED.

## I.  Background

     Plaintiff John Pleasant claims he was terminated from his employment with the Defendant D&N Electric Company due to his disabilities.  He also claims he was wrongfully denied overtime pay while working for the Defendant.  D&N hired the Plaintiff as an electrical estimator on December 7, 2009, and terminated his employment on June 11, 2010.  As an estimator, the Plaintiff's responsibility was to

estimate a project's electrical costs after D&N was contacted about bidding on the electrical component of the project.  Pursuant to an employment agreement both parties signed when his employment began (the "Employment Agreement"), the Plaintiff was to be a salaried employee earning $1,200 per week.  The Employment Agreement included a provision stating "the employee will not be entitled to time and one-half in accordance with Federal and State law."  (See Statement of Material Facts in Support of Def.'s Mot. for Summ. J. ¶¶ 1, 5-7; Ex. A; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 1, 5-7).

As part of the hiring process, the Plaintiff completed an Employee Medical History Questionnaire and a Post Hiring Medical Questionnaire.  According to his answers on those forms, the Plaintiff's only preexisting conditions which were permanent or engendered physical limitations were asthma and hypertension.  He also disclosed right shoulder surgery in 1984 and head injuries in 1984 and 2002.  (See Statement of Material Facts in Support of Def.'s Mot. for Summ. J. ¶¶ 12-14; Ex. C; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 12-14).  D&N contends that the Plaintiff did not disclose any further health conditions, but the Plaintiff contends he verbally disclosed to a supervisor, Robert Starr, that he suffered from COPD/asthma, ADHD, Mood Disorder NOS, and Anxiety Disorder, along with

allergies that caused his eyes to swell.  (Id.; Pl.'s Statement of Material Facts in Opp'n to Def.'s Mot. for Summ. J. ¶¶ 8-11).

The Plaintiff claims that two D&N superiors, the owner Matt Armstrong and the manager Michael Munroe, sought to speak with the Plaintiff's doctor, Dr. Ahmad, concerning the Plaintiff's medical condition after one of them overheard a conversation between the Plaintiff and his supervisor.  They arranged a teleconference during which Dr. Ahmad confirmed that she was treating the Plaintiff for Attention Deficit Disorder, Mood Disorder NOS, and Anxiety Disorder.  The Plaintiff contends he was fired the next day because of the conditions Dr. Ahmad described.  (See Pl.'s Statement of Material Facts in Opp'n to Def.'s Mot. for Summ. J. ¶¶ 19-24, 37).  D&N, however, contends that the Plaintiff was terminated for making a $400,000 error in an estimate he prepared.  (See Statement of Material Facts in Support of Def.'s Mot. for Summ. J. ¶¶ 24-26).

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show

the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## III.  <u>Discussion</u>

The Defendant seeks summary judgment on the Plaintiff's claims for violations

of the Americans with Disabilities Act ("ADA") and the Fair Labor Standards Act

("FLSA").  D&N argues that the ADA claim must fail because the Plaintiff was not

disabled as defined by the Act and even if he was he has not shown his termination

was due to his disabilities.  D&N further argues the FLSA claim must fail because the

Plaintiff falls under the administrative employee exemption to the FLSA.

### A.   <u>The Plaintiff's ADA Claim</u>

"In order to establish a prima facie case of discrimination under the ADA, [the]

plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3)

was subjected to unlawful discrimination because of his disability."  <u>Greenberg v.

BellSouth Telecommunications, Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting

<u>Cash v. Smith</u>, 231 F.3d 1301, 1305 (11th Cir. 2000) (internal alterations omitted)).

A plaintiff is disabled under the ADA if he has "(A) a physical or mental impairment

that substantially limits one or more of the major life activities ...; (B) a record of such an impairment; or (C) [been regarded by his employer] as having such an impairment." Id. at 1264 (quoting 42 U.S.C. § 12102(2)).[1]

Here, the Plaintiff has not created an issue of material fact capable of surviving summary judgment with respect to his ADA claim.  The Plaintiff argues that he has a substantially impairing disability and that he was regarded as having a substantially impairing disability.  With respect to having a substantially impairing disability, the Plaintiff contends that he has difficulty sleeping, ADHD, Anxiety Disorder, Mood Disorder, chronic pulmonary disorder, and severe allergies.  (See Pleasant Aff. ¶¶ 8-12).  The Plaintiff supports this contention by providing a note from Dr. R. Ahmad stating she was treating the Plaintiff for Attention Deficit Disorder, Mood Disorder NOS, and Anxiety Disorder NOS.  (See Pleasant Aff. Ex. B).  The Plaintiff argues these conditions impair his major life activities.

Under the ADA, major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Greenberg, 498 F.3d at 1264 (quoting 29 C.F.R. § 1630.2(i)).  Further, "[a]

_____

[1]Congress amended the ADA on January 1, 2009.  However, the elements for determining whether a plaintiff has demonstrated a prima facie case of discrimination and whether a plaintiff was disabled did not change.  See Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882, 883 & n.1 (11th Cir. 2009) (discussing the amendments).

person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  Id. (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)). Finally, "the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial."  Id. (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002)) (internal alterations omitted).

The Plaintiff contends that his difficulty sleeping is a disability that impairs his basic life functions.  He likewise contends that his ADHD, Anxiety Disorder, and Mood Disorder require constant medical care.  Finally, he contends that his abilities to breathe and see are impaired by his chronic obstructive pulmonary disorder and his severe allergies.  (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 12-13).  The Plaintiff's evidence consists almost entirely of his own affidavit where he states that "[a]t the time relevant to this case, these health conditions substantially affected my ability to breath, to focus and concentrate, and caused extreme stress and anxiety, which resulted in sleep loss and fatigue."  (Pleasant Aff. ¶ 11).  Indeed, regarding his medical disability, the only piece of evidence that the Plaintiff submits in opposition to summary judgment aside from his own affidavit and deposition is the letter from Dr. Ahmad.  That letter, however, only says that the Plaintiff is being treated for

Attention Deficit Disorder, Mood Disorder NOS, and Anxiety Disorder NOS. (See Pleasant Aff. Ex. B).  There is nothing in the letter indicating that the Plaintiff's conditions impaired any major life activities.  It is undisputed that the Plaintiff worked as an electrician or estimator for years with these conditions before his employment with the Defendant.

In King v. The School Board of Monroe County, Florida, No. 06-10072-CIV, 2006 U.S. Dist. LEXIS 92140 (S.D. Fla. Dec. 15, 2006), the plaintiff contended he was discharged in violation of the ADA because of his disabling severe chronic back pain.  However, when the plaintiff was hired he filled out forms indicating he was not physically or otherwise handicapped.  Likewise, he selected "No" when the medical history form asked whether he was disabled.  Id. at *2.  When the plaintiff was terminated, the defendant stated he was fired for his use of profanity in the school computer lab, but the plaintiff contended his termination was due to his disability. The plaintiff further contended his back injury impaired his major life activities of performing manual tasks and working.  However, the court noted that "[p]laintiff has offered only his own affidavit to support his contention.  No evidence from his surgeon, his treating physician(s), hospital records or other documentation was proffered."  Id. at *12.  The court concluded that the plaintiff had not established his major life functions were impaired because the "plaintiff's past (undocumented)

medical condition does not, by itself, prove present disability, impairment, or substantial limitation" and because the plaintiff "offers no evidence of his inability to perform a broad range of jobs either utilizing or not utilizing similar training, knowledge, skills or abilities within his geographical area." Id. at *14-15.

Here, the Plaintiff's case suffers from the same failings as the plaintiff's case in King. The Plaintiff filled out medical history forms when he began his employment with D&N and indicated on those forms that he only suffered from asthma and hypertension. (See Statement of Material Facts in Support of Def.'s Mot. for Summ. J. ¶¶ 12-14; Exs. B & C; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 12-14). Like the plaintiff in King, the Plaintiff did not disclose additional disabling conditions. Also as in King, the Plaintiff is relying solely on his personal affidavit to establish his disability, with the exception of Dr. Ahmad's note indicating that the Plaintiff does have some of the conditions of which he complains but not elaborating further. The only evidence of how those conditions impair the Plaintiff's life activities is the conclusory assertion in his affidavit that his conditions affected his abilities to breathe, focus, and sleep, and caused him stress. (See Pleasant Aff. ¶ 11). This is insufficient at the summary judgment stage. See Price v. Facility Management Group, Inc., 403 F. Supp. 2d 1246, 1255-56 (N.D. Ga. 2005) ("In support of [his clam of substantial impairment], plaintiff asserts in a conclusory manner his 'inability to work

during the depression component of the bipolar disorder ... per Dr. Haley.' Plaintiff

has not presented any testimony of Dr. Haley, either by declaration or deposition, to

substantiate his claim.  To rely on Dr. Haley's assessment of the effects of his bipolar

disorder, plaintiff must produce 'competent evidence' of Dr. Haley's opinion, which

he has not done.").   Accordingly, the Court concludes the Plaintiff has not produced

enough evidence to show that he suffers from a disability that substantially impairs

a major life function.

Likewise, the Plaintiff is unable to show he was regarded as disabled by D&N:[2]

> A plaintiff is 'regarded as' being disabled if he meets one of three
> conditions: (1) he has a physical impairment that does not substantially
> limit major life activities but is treated by an employer as constituting
> such a limitation; (2) has a physical or mental impairment that
> substantially limits major life activities only as a result of the attitude of
> an employer toward such impairment; or (3) has no physical or mental
> impairment but is treated by an employer as having such an impairment.
> 29 C.F.R. 1614.203(a)(5). [The Eleventh Circuit] has held that, for a
> plaintiff to prevail under this theory, he must show two things: (1) that
> the perceived disability involves a major life activity; and (2) that
> the perceived disability is 'substantially limiting' and significant. Sutton v.
> Lader, 185 F.3d 1203, 1209 (11th Cir. 1999).

Rossbach v. City of Miami, 371 F.3d 1354, 1359-1360 (11th Cir. 2004).  Here, the

Plaintiff has not shown that D&N regarded him as disabled, let alone as being disabled

to a substantially limiting and significant extent.  The conversation that Armstrong

---

[2]The Plaintiff does not argue he has a record of impairment. (See Pl.'s Response in Opp'n to Def.'s Mot. for Summ. J., at 10-14).

and Munroe had with the Plaintiff's doctor does not establish that the Defendant regarded the Plaintiff as disabled.  According to the Plaintiff, Dr. Ahmad merely assured the supervisors that the Plaintiff's eyes were swollen due to allergies and that the Plaintiff suffered from various mood and concentration disorders. (See Pleasant Aff. ¶¶ 18-19).  There is no suggestion that the supervisors and the doctor discussed whether these conditions were impairing, and there is no indication that the D&N supervisors found the conditions impairing.  D&N maintains that it did not and does not consider the Plaintiff disabled.  (See Second Munroe Aff. ¶ 2).  Additionally, the medical forms the Plaintiff filled out when he was hired stated he was not disabled. (See Def.'s Mot. for Summ. J. Exs. B & C).  Although the Plaintiff contends he verbally informed Robert Starr of his disabling conditions that he did not list in his medical forms, there is no indication that Starr regarded the Plaintiff as disabled, or that anyone else at D&N was aware of the Plaintiff's additional ailments.  (See Pleasant Aff. ¶ 10).  Accordingly, the Plaintiff has not shown that D&N regarded him as disabled.

Finally, even assuming the Plaintiff was able to show he suffered from a substantially impairing disability or was regarded as suffering from one, he has not shown that the stated reason for his termination was pretext.  The Plaintiff may satisfy his burden of showing the reason for his termination was pretext "either by offering

evidence that [D&N] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, unless the record conclusively shows that the real motive was a non-proffered reason that is non-discriminatory." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  "To show pretext, [Plaintiff] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  "A plaintiff is not allowed to recast an employer's preferred nondiscriminatory reasons or substitute [his] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason." Id. at 1265-66 (quoting Chapman v. A1 Transp., 229 F.3d 1012, 1025 n.11 (11th Cir. 2000)).

    Here, D&N states that the Plaintiff was terminated for making a $400,000 mistake in an estimate.  The Plaintiff seems to admit that he submitted a bid with a $400,000 error, but contends the erroneous estimate was the result of a last minute change in the bid specification and a software error.  In his affidavit, the Plaintiff

states "I did not make a 'mistake' on this estimation job.  Rather, the error was with [the software used for developing estimates] and I did everything prudent and necessary to try to correct it and to promptly notify my supervisor of this issue." (Pleasant Aff. ¶ 29).  The Plaintiff further claims he has heard a supervisor, Robert Starr, joke about making mistakes as high as $700,000.  (Id. ¶ 31).  The Plaintiff also states that neither Armstrong nor Munroe, the supervisors who terminated him, had ever discussed the $400,000 discrepancy with him before he was terminated.  (Id. at 32).

While the Plaintiff's evidence "quarrel[s] with the wisdom of the reason" for his termination, it does not cast such doubt on the proffered reason for his termination that a jury "could find [it] unworthy of credence."   Alvarez, 610 F.3d at 1265.  The fact that Robert Starr and other employees may have previously made mistakes in bids greater than the mistake the Plaintiff made does not mean the reason for the Plaintiff's termination was pretext, but rather that some other employees may not have been terminated for the same error.  Indeed, D&N contends that the Plaintiff had previously made estimation errors and had even been given further training with the software. (See Second Munroe Aff. ¶ 5).  A reasonable employer could determine that one significant mistake from an employee who had already made a few mistakes prior to that is sufficient reason to terminate the employee.  Additionally, the fact that the

discrepancy stemmed from the software instead of the Plaintiff himself does not indicate that the Plaintiff was terminated for his disability.  A reasonable employer could conclude that an employee's difficulty in handling software he is tasked to handle is a valid reason for termination.  Indeed, the Plaintiff was taught how to use the software at another company, and D&N had already provided additional training to the Plaintiff because he had not been saving the software properly, which could lead to estimation errors and may have led to the $400,000 error at issue.  (See Pleasant Dep. at 43-45; Second Munroe Aff. ¶ 5).  Accordingly, because the Plaintiff has not raised an issue of fact regarding whether D&N had credible grounds for terminating the Plaintiff, and because the Plaintiff has not shown an issue of fact with respect to the existence of his disability generally, the Defendant's motion for summary judgment should be granted on the Plaintiff's ADA claim.

B.    The Plaintiff's FLSA Claim

The Plaintiff contends he was denied overtime in violation of the FLSA.  The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  D&N argues that the Plaintiff's claim fails as a matter of law because the Plaintiff falls under the administrative employee exception of the FLSA.  The administrative employee exception exempts "any employee (1) compensated on a salary or fee basis at a rate

of not less than $455 per week . . . ; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200 (2009).

The Court concludes that the Plaintiff was an administrative employee exempt from the FLSA.  The Plaintiff was paid $1,200 per week, well above the $455 per week threshold.  (See Statement of Material Facts in Support of Def.'s Mot. for Summ. J. Ex. A).  Likewise, the Plaintiff's work was directly related to the management or general operations of his employer because the submission of estimates is of paramount importance to the continuing operations of any contracting company like D&N.  See Reyes v. Hollywood Woodwork, Inc., 360 F. Supp. 2d 1288, 1292 (S.D. Fla. 2005) ("The court concludes, as a matter of law, that the preparation of bids is not sales or production work, but rather is an important part of general business operations necessary for the Defendants to obtain production work and sell their products.").  Finally, the Plaintiff's own testimony reveals that he did exercise judgment and discretion in computing the bids.  In preparing an estimate, the Plaintiff would read blueprints, meet with engineers, visually inspect project locations, and then consider the amount of labor and materials needed to do that work.  He would

even contact vendors for pricing and assess the costs of leasing equipment.  When he inspected project locations, he would go alone as the sole representative of D&N. (See Pleasant Dep. at 40-45).   The only evidence against the Plaintiff's use of discretion is contained in his affidavit.  The Plaintiff states he only entered data into the software and transmitted the projected costs to supervisors.  (Pleasant Aff. ¶ 3). He states in a conclusory fashion that he did not exercise discretion.  (Id. at ¶ 4). These contentions are belied by his deposition testimony where he describes reading blueprints and visiting potential project sites specifically in order to estimate the data he would enter into his software.  He also admits in his testimony that the several estimators at D&N could come up with different estimates, implying that each estimator utilized some judgment.  (See Pleasant Dep. at 47).

In Reyes v. Hollywood Woodwork, Inc., 360 F. Supp. 2d 1288 (S.D. Fla. 2005), the plaintiff worked as an estimator for the defendant architectural woodworking company and claimed the defendant wrongfully denied him overtime pay.  As an estimator, the plaintiff would "review a given set of architectural drawings and estimate the costs for the various wood materials and labor that would accomplish building and installing the particular woodwork contemplated by the plans at a competitive price."  Id. at 1289.  The court noted that "[d]ifferent estimators could reach results that differ by up to 20%."  Id.  The plaintiff's bids would be reviewed by

the chief estimator and then submitted to the company seeking woodwork in hopes of obtaining a contract.  First, the Reyes court concluded that the preparation of bids was "an important part of general business operations necessary" for the defendant's to sell their products.  Id. at 1292.  Next, with respect to the plaintiff's exercise of judgment and discretion, the court noted that the federal regulations do not require the employee to have the ability to make final decisions, but rather "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."  Reyes, 360 F. Supp. 2d at 1293 (quoting 29 C.F.R. § 541.207(e)(1)).[3]  Because "the plaintiff's bid estimates were recommendations that while subject to some review, were recommendations for actions," the court concluded that plaintiff's role as an estimator was exempt from the FLSA.  Id.

The Plaintiff's role at D&N is nearly identical to the role of the employee in Reyes.   Here, as in Reyes, the Plaintiff's estimations were recommendations for actions.  Further, as in Reyes, where the plaintiff's bid estimates were subject to review by a senior estimator but still retained their character as independent products, the Plaintiff's bids here were prepared solely by the Plaintiff but often reviewed by

---

[3]At the time the Plaintiff was hired, in December 2009, the relevant regulation was located at 29 C.F.R. § 541.202(b) (2009).

Starr.  (See Pleasant Dep. at 45-47).  Likewise, both here and in Reyes, the estimator would gather data on his own using his own methodology and compute that data to create an estimate. (See Pleasant Dep. at 47).  Finally, the estimates the Plaintiff would prepare for D&N and the estimates the plaintiff prepared in Reyes could vary from the estimates different estimators made, implying a use of discretion and judgment among the estimators.  In sum, the estimators here and in Reyes both performed essential business functions and utilized their own judgment and discretion.  Accordingly, the Court concludes that the Plaintiff qualifies for the administrative exemption to the FLSA.  The Defendant's motion for summary judgment should be granted with respect to the Plaintiff's FLSA claim.

## IV.  Conclusion

For the reasons set forth above, the Defendant D&N Electric Company's Motion for Summary Judgment [Doc. 31] is GRANTED.

SO ORDERED, this 1 day of April, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge